**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**
**DENVER DIVISION**

| | |
|---|---|
| CURTIS WEBBER,<br><br>Plaintiff,<br><br>v.<br><br>MEDICREDIT, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Curtis Webber ("Curtis"), is a natural person who resided in Denver, Colorado, at all times relevant to this action.

2. Defendant, Medicredit, Inc. ("Medicredit"), is a Missouri corporation that maintained its principal place of business in Columbia, Missouri, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. Before Medicredit began contacting Curtis, it and Curtis had no prior business relationship and Curtis had never provided express consent to Medicredit to be contacted on his cellular telephone.

6. Medicredit regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of Medicredit's revenue is debt collection.

8. Medicredit is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, Medicredit contacted Curtis to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Curtis is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, and before, Medicredit has been calling Curtis on his cellular phone ending in -1683 in connection with the collection of a debt.

13. Shortly after the calls began, Curtis communicated his desire that Medicredit cease calling him.

14. Despite this communication, Medicredit continued to call Curtis on his cellular phone.

15. Medicredit's collection efforts, including but not limited to its telephone calls, caused Curtis emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

16. Medicredit's collection efforts also intruded upon Curtis's privacy.

17. In addition, each time Medicredit placed a telephone call to Curtis, Medicredit occupied Curtis's telephone number such that Curtis was unable to receive other phone calls at that telephone number while Medicredit was calling him.

18. Medicredit's telephone calls also forced Curtis to lose time by having to tend to Medicredit's unwanted calls.

**COUNT ONE**

**Violation of the Fair Debt Collection Practices Act**

19. Curtis re-alleges and incorporates by reference Paragraphs 5 through 18 above as if fully set forth herein.

20. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

21. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

22. The likely effect of Medicredit's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Curtis.

23. Medicredit violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Curtis in connection with the collection of the debt.

**COUNT TWO**

**Violation of the Fair Debt Collection Practices Act**

24. Curtis re-alleges and incorporates by reference Paragraphs 5 through 18 above as if fully set forth herein.

25. Medicredit violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

**COUNT THREE**

**Violation of the Telephone Consumer Protection Act**

26. Curtis re-alleges and incorporates by reference Paragraphs 5 through 18 above as if fully set forth herein.

27. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

28. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

29. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

30. A predictive dialer is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

31. Medicredit used a predictive dialer to place calls to Curtis on his cellular telephone.

32. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

33. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

34. Curtis was the "called party" in each telephone call Medicredit placed to Curtis's cellular telephone.

35. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

36. Medicredit violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Curtis on his cellular telephone without Curtis's prior express consent or after such consent had been revoked.

37. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

38. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

39. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

40. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

41. Medicredit voluntarily placed telephone calls to Curtis's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

42. Medicredit's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

43. Curtis demands a trial by jury.

## PRAYER FOR RELIEF

44. Curtis prays for the following relief:

    a. Judgment against Medicredit for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

b. An order enjoining Medicredit from placing further telephone calls to Curtis's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

c. Judgment against Medicredit for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Medicredit made in violation of the TCPA.

d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: November 14, 2016

By: /s/ David M. Menditto

David M. Menditto, Esq.
HYSLIP & TAYLOR, LLC LPA
1100 W. Cermak Rd., Suite B410
Chicago, IL 60608
Phone: 312-380-6110
Fax: 312-361-3509
Email: davidm@fairdebt411.com
Attorney for Plaintiff, Curtis Webber